**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LASERMASTER INTERNATIONAL INC., <br><br> Plaintiff, <br><br> v. <br><br> THE NETHERLANDS INSURANCE COMPANY, <br><br> Defendants. | Civil Action No. 15-7614 (CCC) <br><br> **OPINION AND ORDER** |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Plaintiff Lasermaster International Inc. ("Plaintiff" or "Lasermaster") for leave to file an Amended Complaint asserting an additional cause of action alleging bad faith denial of insurance payment on the part of Defendant Netherlands Insurance Company ("Defendant" or "Netherlands") [ECF No. 36]. Defendant opposes Plaintiff's motion [ECF No. 37]. The Court fully reviewed the parties' written submissions and considers Plaintiff's motion without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons set forth below, Plaintiff's Motion to Amend is **DENIED**.

**I.  BACKGROUND**

  **A. Factual Background and Procedural History**

This matter arises from a contract dispute between Plaintiff, a New Jersey corporation, and Defendant, a New Hampshire corporation, for alleged losses that occurred during and as a result of Superstorm Sandy. *See* Compl., ECF No. 1 ¶¶ 10-13. Lasermaster is a manufacturer of paper products and maintains sample products at its office in New Jersey. Prior to Superstorm Sandy, Lasermaster obtained an insurance policy (the "Policy") from Defendant to cover, *inter alia*, losses

1

of business income and losses to the business's personal property. *See Id.* ¶¶ 14, 17. The Policy was effective from August 1, 2012 through and including August 1, 2013. *See Id.* ¶ 15. At all relevant times, Defendant was authorized by the New Jersey Department of Banking and Insurance to issue policies of insurance, including the policy at issue herein, in the State of New Jersey. *See Id.* ¶ 13.

On October 28, 2012, Superstorm Sandy caused damage to Lasermaster's property, located at 1000 South First Street, Harrison, New Jersey (the "Premises"). *See Id.* ¶¶ 10, 20. As a result of the winds and rains associated with Superstorm Sandy, Lasermaster alleges that it sustained damage to its personal property and business income. *See* Pl.'s Br. in Supp. of Mot. to Am. the Compl., ECF No. 36-8 at 3 ("Plaintiff's Brief"). Specifically, Lasermaster alleges that a hole was created in the roof of the Premises, which allowed water to enter and damage its sample products. *See Id.*

On November 10, 2012, Lasermaster submitted Claim Number 704994620 (the "Claim") to Defendant detailing the losses it suffered during Superstorm Sandy. *See* Compl. ¶ 21. Thereafter, Defendant began investigating the Claim. In March of 2013, the parties reached an agreement as to the stock portion of Lasermaster's business loss claim. *See* Def.'s Br. in Opp'n, ECF No. 37 at 3. However, the remaining claims would prove to be much more complicated.

According to Defendant, Plaintiff's claim for loss of business income was complicated by the "difficulty in measuring the alleged loss of designs and sample products that formed the basis of the claim." *Id.* at 3-4. Defendant further alleged that:

> these complications were only compounded by the fact that on October 24, 2014, over a year and a half after the loss of business income claim was first raised, and over a year and a half after the initial claim submission for the alleged loss of business income and samples, Lasermaster's public adjuster informed Netherlands that it was switching accountants and re-submitting its business personal property and loss of business claim.

*Id*. at 4-5. By November 2014, Lasermaster switched accountants and submitted a revised and substantially increased claim. *Id*. at 5. To evaluate Lasermaster's revised claim, Defendant engaged consultant Quintin Schwartz of Document Reprocessors to evaluate whether the samples Lasermaster alleged it lost could be repaired. *See Id*. While Mr. Schwartz was conducting his evaluation of the samples, on October 20, 2015, Lasermaster filed its Complaint in this matter alleging, *inter alia*, that Defendant had constructively denied its insurance claim. *See* Compl. ¶ 25. In its Complaint, Lasermaster alleges breach of contract for business income loss (Count I), and breach of contract for business personal property (Count II). *See generally* Compl. After multiple extensions [ECF Nos. 5, 11], Defendant filed its answer on December 18, 2015. ECF No. 13. The Court then convened a case management conference on February 25, 2016.

In its original Pretrial Scheduling Order ("Scheduling Order"), the Court ordered that "[a]ny motion to amend the pleadings must be filed [no] later than **5/13/2016**." ECF No. 16 ¶ 15 (emphasis in original). After the case management conference, and before the present motion was filed, the Court conducted six (6) telephone status conferences with the parties.[1] At the parties' request, the Court amended deadlines in the Pretrial Scheduling Order on four occasions. *See* ECF Nos. 26, 28, 30, 34.[2] While certain dates were amended based on the Court's Order, the Court did not modify the deadline for filing motions to amend pleadings and no request for such a modification was ever submitted by the parties.

---

[1] The telephone conferences were held on the following dates: May 24, 2016, August 11, 2016, October 26, 2016, January 30, 2017, April 28, 2017, and August 29, 2017.
[2] Prior to the telephone conferences with the Court, the parties submitted letters [ECF Nos. 25, 27, 29, 33] to update the Court on the status of the case and to request extensions of time to complete fact discovery. *See* ECF No. 25 at 1; *see also* ECF No. 27 at 1; ECF No. 29 at 1; ECF No. 33 at 1.

On September 12, 2017, Lasermaster filed the instant motion to amend. Pl.'s Mot. to Amend, ECF No. 36. Defendant filed its response to the instant motion on October 2, 2017 [ECF No. 37], and Lasermaster filed its reply on October 10, 2017 [ECF No. 38].

**B. The Parties' Arguments**

Lasermaster seeks leave to file an Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), to add a "Bad Faith Delay and Denial of Insurance Payment" cause of action. *See* Pl.'s. Br., ECF No. 36-8; *see also* Proposed Am. Compl., ECF No. 36-2 (Third Claim). Lasermaster argues that leave to file an Amended Complaint should be granted because the facts supporting the amendment have only recently been uncovered in discovery. *See* Pl.'s Br., ECF No. 36-8 at 2. Lasermaster asserts that "[i]t would be unjust to deny Plaintiff the right to pursue a claim where the facts supporting the claim were completely within the control of the Defendant and unavailable to the Plaintiff until more than a year after the deadline to amend the Complaint." *Id*. at 14. Lasermaster also asserts that the proposed amendment is not futile, and that Defendant will not suffer any prejudice or undue delay if leave to amend is granted. *See Id*. at 8, 10.

In response to Lasermaster's motion, Defendant argues that leave to amend should be denied for four reasons. First, Defendant argues that Lasermaster's motion should be denied because Lasermaster failed to establish good cause to amend its Complaint as required under Rule 16(b). *See* Def.'s Br. in Opp'n, ECF No. 37 at 9. Defendant notes that the mere existence of prior extensions of fact discovery do not relieve Lasermaster of its burden to establish good cause. *See Id*. Second, Defendant argues that Lasermaster's motion should be denied because there is no satisfactory explanation for Lasermaster's undue delay in seeking to amend. *See Id*. at 12. To this point, Defendant argues that all of the information allegedly supporting Lasermaster's bad faith claim was available to Lasermaster in October of 2015. *See Id*. Defendant contends that even if

4

new information were discovered during the depositions as alleged by Lasermaster, Plaintiff made a conscious decision to do nothing with that information for months prior to the instant motion. Therefore, Defendant contends that Lasermaster's motion should be denied. *See Id*. Third, Defendant argues that Lasermaster's motion should be denied because an amendment at this late stage in discovery will "severely cripple" Defendant's ability to conduct any discovery on the bad faith claim. *Id*. at 18. Lastly, Defendant argues that Lasermaster's Amended Complaint should be denied on the grounds of futility, since it would not survive a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Id*. at 20.

## II. DISCUSSION

"The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." *Karlo v. Pittsburgh Glass Works, LLC*, 2011 WL 5170445, at *2 (W.D.Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo*, 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)). In situations such as the present, where a party seeks to amend "after the deadline for doing so set by the Court, the movant must satisfy the [good cause standard] of Rule 16 before the Court will turn to Rule 15." *Id*. at *2; *see also Dimensional Commc'n, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005) (instructing that the Third Circuit has adopted a good cause standard when determining the propriety of a motion to amend after the deadline has elapsed).

### A. Rule 16 Standard

Federal Rule of Civil Procedure 16 authorizes courts to enter schedules of proceedings. The pretrial scheduling order allows a court to take "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 469 (D.N.J. Oct. 19, 1990) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 Amendment)); *see also Newton v. A.C. & S., Inc.,* 918 F.2d 1121, 1126 (3d Cir. 1990) (stating the purpose of Rule 16 is to provide for judicial control over cases, streamline proceedings, maximize efficiency of the court system, and actively manage the timetable of case preparation to expedite speedy and efficient disposition of cases).

A scheduling order must, among other things, "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). The requirement of a deadline for amending pleadings in the pretrial scheduling order "assures that at some point . . . the pleadings will be fixed." Fed. R. Civ. P. 16(b) advisory committee's note (1983 Amendment); *see also Harrison,* 133 F.R.D. at 469 ("The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired."). The burden is on the moving party to show "good cause" for its failure to comply with the applicable scheduling order, and accordingly, for the Court to allow its proposed amended pleading. *Prince v. Aiellos,* No. 09–5429, 2012 WL 1883812, at *6 (D.N.J. May 22, 2012) (quoting *Graham,* 271 F.R.D. at 118); *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.,* 614 F.3d 57, 84 (3d Cir. 2010) (affirming the trial court's holding that "Rule 16(b)(4) focuses on the moving party's burden to show due diligence").

Whether "good cause" exists under Rule 16 hinges to a large extent on the diligence, or lack thereof, of the moving party. *GlobespanVirata, Inc. v. Texas Instruments, Inc.,* 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (quoting *Rent–A–Ctr. v. Mamaroneck Ave. Corp.,* 215 F.R.D. 100, 104 (S.D.N.Y. Apr. 9, 2003)). Put succinctly, "[a]bsent diligence, there is no 'good cause.'" *Chancellor v. Pottsgrove Sch. Dist.,* 501 F.Supp.2d 695, 702 (E.D.Pa. Aug. 8, 2007); *see also* Fed. R. Civ. P. 16(b), advisory committee's note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

When examining a party's diligence and whether "good cause" exists for granting an otherwise untimely motion to amend pleadings, courts typically ascertain whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired. *See Stallings ex rel. Estate of Stallings v. IBM Corp.,* Civ. No. 08–3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); *Kennedy v. City of Newark,*, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed."). If a movant had the knowledge necessary to file a motion to amend prior to the expiration of the Court's deadline set forth in the scheduling order, and if the movant can provide no satisfactory explanation for the delay, the Court may, in its discretion, deny the motion. *See Dimensional Commc'n.,* 148 F. App'x at 85 (upholding trial court's finding that the movant could not show "good cause" because it was in possession of the facts underlying its proposed counterclaim well before the deadline for amendment).

7

### B. Rule 16 Analysis

With respect to the good cause standard, Lasermaster puts forth three arguments. First, Lasermaster argues that good cause does not have to be established in cases where fact discovery has proceeded beyond the discovery deadlines. Pl.'s Br. at 13. Second, Lasermaster argues that a delay in discovery can establish good cause for a delayed filing. *Id*. Lastly, Lasermaster argues that it did not delay asserting this cause of action because it was unaware that the claim existed prior to taking depositions in this case. *Id*.

In arguing that good cause does not need to be established, Lasermaster relies on *L'Oreal Wrinkle Cream Mktg. Practices Litig..* ("*L'Oreal*"), No. 12-3571, 2015 WL 5770202, (D.N.J. Sep. 30, 2015). In *L'Oreal*, the parties were engaged in a complicated multidistrict litigation comprised of putative class actions against a cosmetic manufacturer. *See Id*. at *1. After entering a scheduling order, the court conducted at least fifteen conferences with the parties to address a wide range of discovery disputes. *Id*. Because every issue was heavily contested, the court explained that many of the discovery disputes required full and formal briefings. *Id*. Following the expiration of the court's amendment deadline, the plaintiff sought leave to file an amended complaint. *Id*. at *2.

In opposition to the plaintiff's motion, the defendant argued that the plaintiff should be required to demonstrate good cause because the deadline to amend expired. *Id*. Unpersuaded by the defendant's argument, the court applied Rule 15 and explained that it was unnecessary to apply Rule 16 to the motion based on the circumstances of this case. *Id*. at *3. In so finding, the court emphasized the fact that the parties needed many additional months of discovery because the case was still in the somewhat early stages and much remained to be accomplished. *Id*. at *1. The court additionally noted that the parties consented to multiple extensions in the case and were currently

negotiating another extension. Therefore, the court determined that it would be inequitable to hold the plaintiff to the amendment deadline. *Id.* at *3.

Turning to Lasermaster's contention, the Court finds that *L'Oreal* is distinguishable from the current litigation and that Plaintiff must demonstrate good cause to amend its pleading. Unlike *L'Oreal*, this is not a complicated multidistrict litigation. Rather, this is a simple breach of contract case and aside from the present motion, discovery in this matter has been largely uncontentious. Whereas the parties in *L'Oreal* litigated every discovery issue and requested formal briefing on multiple discovery disputes, s*ee L'Oreal*, 2015 WL 5770202, at *1, nothing in the record of this matter indicates that the parties' legal relationship is contentious or that there have been significant issues that require the Court's attention. Moreover, in *L'Oreal* the court explained that it was unnecessary to hold the parties to the amendment deadline because they were currently negotiating another extension on discovery. *Id.* at *3. In the present matter, the parties were approaching the end of discovery and were not discussing any extensions. In fact, in a telephone conference with the parties on August 29, 2017, the undersigned emphasized that any additional request to extend deadlines would not be viewed favorably by the Court. Def.'s Br. in Opp'n, ECF No. 37 at 17. Accordingly, the present matter is distinguishable from *L'Oreal* and Lasermaster must first demonstrate good cause before the Court addresses Rule 15.

As to Lasermaster's second contention that a delay in discovery can establish good cause for a delayed filing, Lasermaster relies on *High 5 Games, LLC v. Marks* ("*High 5 Games*"), No. CV 13-7161 (JMV), 2017 WL 349375, at *1 (D.N.J. Jan. 24, 2017). In *High 5 Games*, the parties agreed that November 14, 2016 would be the deadline to amend the pleadings and submitted the deadline to the court in the form of a proposed scheduling order. *Id.* at *2. However, due to ongoing discovery and scheduling issues the order was never entered. *Id*. On December 23, 2016, after the

proposed deadline to amend expired, the plaintiff filed a motion to amend. *Id*. at *3. The court determined that the November 14, 2016 deadline to amend previously agreed to by the parties was not the true amendment deadline because the court never entered the proposed order. *Id*. Therefore, the court concluded that there was no need for the plaintiff to show good cause under Rule 16.

Lasermaster's second contention is easily dispatched. Unlike in *High 5 Games*, this Court clearly entered a Scheduling Order setting forth the deadline to amend pleadings on May 13, 2016. *See* ECF No. 16 ¶ 15. Lasermaster filed the present motion [ECF No. 36] on September 12, 2017, more than a year after the deadline to amend. Accordingly, Lasermaster failed to comply with the Court's duly entered Scheduling Order and must demonstrate "good cause" under Rule 16.

Lastly, Lasermaster contends that it would be unjust to deny its motion to amend because it did not previously possess the knowledge to assert its bad faith claim against Defendant. Pl.'s Br. at 13. According to Lasermaster, it originally believed that Defendant acted in good faith in delaying payment because it doubted the merits of its claims or because Defendant was diligently investigating the correct value of the claim. *Id*. To the contrary, Lasermaster alleges that it was the clear testimony of Defendant's expert that revealed that Defendant lacked any reasonable explanation for delays in processing Lasermaster's claims. *Id*. at 6. More specifically, Lasermaster alleges that the testimony revealed that Lasermaster's "samples were beyond repair, that the expert never mentioned a possibility to repair to Defendant, and that Defendant's expert was completely unaware of any request for or concern regarding salt water by Defendant." *Id*.

In response, Defendant argues that the Court should deny Lasermaster's motion because it cannot show good cause. Defendant puts forth two arguments. First, Defendant argues that the facts purportedly relevant to Lasermaster's bad faith claim have long been available to Lasermaster. To this point, Defendant contends that the relevant information was reported in a

summary of Mr. Schwartz's findings, which was emailed to Lasermaster's public adjuster on May 1, 2015 and produced during discovery in early 2016. Def.'s Br. in Opp'n, ECF No. 37 at 13. More specifically, Defendant contends that the summary of findings sent to Lasermaster "clearly stated that based on Document Reprocessors' review of the samples they were not reparable." *Id*. at 14.

Second, Defendant argues that Lasermaster had multiple opportunities to alert the Court that it needed an extension of time to file a motion to amend, but failed to do so. To support its argument, Defendant points out that the depositions from which Lasermaster claims to have learned the new information to allege its bad faith claim were conducted in March and June of 2017. *Id*. at 16. In the three months following the June deposition, Defendant notes that the parties submitted joint letters and participated in a telephone status conference with the Court on August 29, 2017. *Id*. at 16-17. Despite the multiple opportunities Lasermaster had to raise the issue of its present motion, Defendant contends that Lasermaster's delay in filing the present motion is inexcusable and its motion should therefore be denied. *Id*. at 17-18.

In its reply, Lasermaster contends that it did not possess enough information on its proposed bad faith claim to survive a motion to dismiss. Pl.'s Reply Br., ECF No. 38 at 4. Lasermaster argues that "absent any documentary evidence or testimony on the matter, any assertion by Lasermaster that the Defendant had acted in bad faith would have been mere speculation." *Id*. Taking this into account, Lasermaster claims that after the deposition of Mr. Schwartz and Timothy Cocker it was able to determine that it had sufficient information to make allegations that would rise beyond mere speculation of bad faith. *Id*. at 4-5. Although Lasermaster claimed to be in possession of sufficient information to allege its bad faith claim, Lasermaster hoped to obtain additional testimony from David Royal during his deposition scheduled in August

11

of 2017. *Id*. at 5. After Mr. Royal's deposition was postponed, Lasermaster claims that it decided to file the present motion at that time, rather than wait for the additional testimony. *Id*.

With respect to this contention, the Court finds that Lasermaster has not demonstrated good cause for allowing an amendment after the May 13, 2016. Even if Lasermaster first learned of its alleged bad faith claim after the March and June 2017 depositions as it asserts, Lasermaster was not diligent in seeking leave to file a motion to amend pleadings. Following the relevant depositions and before Lasermaster's present motion, the parties' submitted two joint letters to the Court [ECF Nos. 31, 33], deadlines in the Scheduling Order were amended twice [ECF Nos. 32, 34], and the Court held a telephone conference with the parties to address, *inter alia*, any issues the parties raised and proposed amendments to deadlines. Lasermaster's present motion was filed on September 12, 2017. *See* ECF No. 35. Thus, Lasermaster had several months in which it could have raised concerns over the possibility of the amendment it now seeks. Lasermaster did not do so. Nor did Lasermaster express any concerns to the Court during its August 29, 2017 telephone conference in which the undersigned addressed any issues the parties wanted to discuss. The good cause standard requires that the party seeking to amend the pleading be diligent. Where a party allegedly learns new information to add a claim, a diligent party should request an extension of the deadline to amend pleadings, or at the very least, promptly raise the issue with the Court. Since Lasermaster did neither, the Court finds that Lasermaster did not act diligently.

Moreover, Lasermaster possessed or should have possessed the knowledge necessary to file the motion to amend before the deadline expired. *See Stallings ex rel. Estate of Stallings*, 2009 WL 2905471, at *16. Perhaps the most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend. *See Dimensional Commc'ns,* 148 Fed. Appx. at 85 ("Magistrate Judge Arleo found that Oz could not satisfy Rule 16(b)'s good cause

requirement because Oz was in possession of the facts underlying the proposed counterclaim well before the amendment deadline."). Here, it is clear that the purportedly relevant information necessary for Lasermaster to file its bad faith claim was available to Plaintiff before the deadline to amend had expired. Defendant claims that it provided Lasermaster and Lasermaster's public adjuster with Mr. Schwartz's summary findings via email on May 1, 2015 and again during discovery early in 2016. Def.'s Br. in Opp'n, ECF No. 37 at 13. In support of this claim, Defendant produced the summary, which in relevant part, provides

> The abstract of the expert that was presented, clearly sets forth that the samples he obtained cannot be restored. To [which] the expert clearly set forth that: **[i]t is [Document Reprocessors] position that if all the film and prints that are sitting in the dumpster . . . are of the same condition as the samples released to [Document Reprocessors], then none of them could be used to re-create the new silk screens and or prints.**"

O'Leary Cert., Exh. A, ECF No. 37-2 at 4 (emphasis in original).[3] Lasermaster does not deny that it received Mr. Schwartz's findings which clearly states the samples were not reparable; rather Lasermaster claims that "Mr. Cocker's statements regarding possible recovery of the samples post-date the expert report and *may* have reflected a conversation between Mr. Cocker and Mr. Schwartz's organization." Pl.'s Br. at 4. While Lasermaster may be correct in its assertion regarding Mr. Cocker's statements, Lasermaster's excuse does not eliminate the fact that it possessed the knowledge necessary to file its motion to amend before the deadline expired. For these reasons, Lasermaster has failed to show good cause why they should be allowed to amend the Complaint after the deadline to amend has expired, and Lasermaster's motion to amend is **DENIED**.

### C. Rule 15 Standard

---

[3] In the interest of clarity, the Court cites to the page number in the ECF header imprinted on the document.

13

Notwithstanding, even if Lasermaster could demonstrate good cause, the amendment would still be disallowed under Rule 15 because the amendment is futile. In determining a motion for leave to amend, courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Absent these factors, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

### D. Rule 15 analysis

Here, Defendant challenges Lasermaster's proposed amendments on "futility" grounds.[4] A proposed amendment is considered futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted). In determining whether an amendment is insufficient on its face, the Court employs the same standard as in a Rule 12(b)(6) motion to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted). Under a Rule 12(b)(6) analysis, the question is not whether the movant will ultimately prevail, and detailed factual allegations are not necessary to survive such a motion. *Antoine v. KPMG Corp.,* 2010 WL 147928, at *6 (D.N.J. Jan. 6, 2010). If a proposed amendment is not clearly futile, then denial of leave to amend is improper. *Meadows v. Hudson County Bd. of Elections,* 2006 WL 2482956, at *3 (D.N.J. Aug. 24, 2006).

---

[4] Defendant also challenges Plaintiff's proposed amendment on the grounds that it is unduly delayed, and will be prejudicial. Because the Court finds that the amendment should be barred under Rule 16, the Court will only address Defendant's futility argument.

14

In the context of insurance coverage cases, the New Jersey Supreme Court has established that a cause of action may exist for an insurance company's "bad faith" failure to pay an insured's claim. *Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 400 (D.N.J. 2000). Such bad faith claims are to be analyzed under a "fairly debatable" standard, which posits that "[i]f a claim is 'fairly debatable,' no liability in tort will arise." *Pickett v. Lloyd's*, 621 A.2d 445, 453 (N.J. 1993). Thus, under the "fairly debatable" standard, a claimant must be able to establish a right to summary judgment, as a matter of law, for coverage before asserting a bad faith claim against an insurer for their refusal to pay a claim. *See Polizzi Meats v. Aetna Life & Cas. Co.*, 931 F. Supp. 328, 339 (D.N.J. 1996). "[I]f plaintiff cannot establish a right to summary judgment, the bad faith claim fails. In other words, if there are material issues of disputed fact which would preclude summary judgment as a matter of law, an insured cannot maintain a cause of action for bad faith." *Am. Gen. Life Ins. Co. v. Ellman Sav. Irrevocable Tr.*, No. CIV.A. 08-5364 MLC, 2010 WL 5253611, at *7 (D.N.J. Dec. 17, 2010). (citations omitted); s*ee also Tarsio*, 108 F. Supp. 2d at 401 ("[i]f factual issues exist as to the underlying claim… the Court must dismiss plaintiff's second cause of action--the "bad faith" claim"); *Hudson Universal v. Aetna Ins. Co.*, 987 F. Supp. 337, 342 (D.N.J. 1997) ("an insurer's disclaimer of coverage cannot be held to be in bad faith unless the insured is granted summary judgment on the issue of coverage"). "When the insured's complaint contains issues of material fact as to the underlying claim, dismissal of a related bad faith claim is proper." *New Jersey Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 11-CV-0630 DMC JAD, 2011 WL 6887130, at *7 (D.N.J. Dec. 27, 2011).

Lasermaster seeks to add a cause of action for bad faith delay and denial of insurance payment. Lasermaster alleges that throughout Defendant's investigation of its claims, Defendant repeatedly delayed hiring experts whose input was necessary to provide an objective evaluation of

Lasermaster's claims. Pl.'s Br., ECF No. 36-8 at 11. Lasermaster further alleges that Defendant's investigation and denial were unreasonable. *Id*. To that point, Lasermaster alleges, *inter alia*, that Defendant violated its own internal guidelines on handling claims, ignored the advice of its expert, failed to hire an accountant to evaluate Lasermaster's claims, and failed to contact vendors whose business Lasermaster claimed to have lost. *Id*. at 12. Based on these allegations, Lasermaster claims that Defendant constructively denied its Claim. *See* Compl. ¶ 25.

In response, Defendant argues that leave to amend should be denied because Lasermaster cannot establish a claim for bad faith as a matter of law. Initially, Defendant argues that there is no basis for a bad faith allegation because Defendant's investigation was still ongoing at the time this action was initiated. Def.'s Br. in Opp'n, ECF No. 37 at 20-21. Second, Defendant contends that many of the delays that occurred during the investigation were of Lasermaster's own making. *Id*. at 21. For instance, Defendant claims that Lasermaster switched accountants during the investigation and submitted a revised and substantially increased claim more than year after the initial claim submission. *Id*. at 4. Also, Defendant asserts that the delays were due to difficulty in measuring the alleged loss of designs and sample products. *Id*. To assist in evaluating Lasermaster's Claim, Defendant engaged Mr. Schwartz of Document Reprocessors. *Id*. at 5. At the time this action was initiated, Mr. Schwartz had not completed the evaluation of Lasermaster's samples. *Id*. at 6.

In order to prevail on a claim of action for bad faith delay and denial of insurance payment, Lasermaster must satisfy the two-factor test set forth in *Pickett*, which holds that "to show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for

denying the claim." *Id*. In other words, If Plaintiff cannot establish a right to summary judgment on the underlying coverage claim, Plaintiff's bad faith claim fails. *See Id*.

The Court finds that the uncertainty of the facts surrounding Defendant's denial of Lasermaster's Claim is "fairly debatable," which would preclude summary judgment as a matter of law. Although Lasermaster alleges that Defendant's actions were unreasonable, the parties put forth two completely different versions of the events that led to Lasermaster's initiation of this action and Plaintiff's proposed bad faith claim. While the Court makes no judgment on the parties' substantive claims, the evidence presented to the Court demonstrates that there are triable issues of fact regarding Lasermaster's underlying claim which would preclude summary judgment in its favor. Because there are question of fact as to the underlying claim, Defendant has satisfied the "fairly debatable" standard. Accordingly, the Court finds that Lasermaster's proposed amendment is futile, and Lasermaster's motion to amend is **DENIED**.

### III. CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 20th day of April, 2018,

**ORDERED** that Plaintiff's motion for leave to file an Amended Complaint [ECF No. 36] is **DENIED.**

                                                      s/James B. Clark, III
                                                     **HONORABLE JAMES B. CLARK, III**
                                                     **UNITED STATES MAGISTRATE JUDGE**